THE MISSOURI PACIFIC RAILWAY COMPANY v. SAMUEL H. RENFRO.

52  237
55  218

1. SURFACE WATER, *Flow of* — *R. le.* The rule of the common law as to the flow of surface water affirmed. *A. T. & S. F. Rld. Co. v. Hammer*, 22 Kas. 763; *C. K. & N. Rly. Co. v. Steck*, 51 id. 737.

2. ——— *Obstruction of Roadbed* — *Liability.* A railway company, in the absence of negligence or unskillfulness in the construction of its road, will not be liable to an adjoining landowner for injuries from the overflow of surface water, occasioned by the obstruction of the roadbed.

3. ——— *Not Liable to Adjoining Landowner, When.* Where a railway company, for the purpose of properly constructing its roadbed, takes earth from one part of its premises and uses it upon the roadbed, thus leaving a ditch along each side of it, in the usual and ordinary way of constructing railways in level or prairie countries, the company will not be liable to an adjoining landowner, through whose premises a right-of-way has been properly condemned and paid for, on account of injuries occasioned by surface water, even though the effect of such ditches and roadbed may be to prevent surface water

which before flowed upon the land from coming upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go.

*Error from Wilson District Court.*

ACTION by *Renfro* against the *Railway Company* to recover damages to his premises caused by surface water. Judgment for the plaintiff at the September term, 1889. The defendant *Company* brings the case to this court. The material facts are stated in the opinion.

*J. H. Richards*, and *C. E. Benton*, for plaintiff in error:

We do not believe that any court has ever affirmed, upon the principles of the common law, that a railway company constructing a railroad where it had the lawful right to construct it was guilty of negligence (1) because it took dirt from the sides of its railroad for the purpose of constructing its grade, thereby leaving a ditch or borrow-pit; (2) because it cut through an embankment or hedgerow for the purpose of constructing its road where it had a right to construct it, and when it could not have constructed its road without doing so; (3) because it permitted mere surface water, falling or naturally flowing upon its land, to take its natural course and flow upon the land of another; (4) because it did not construct a larger culvert at a place where it was under no obligation to construct a culvert at all.

There are, however, many cases precisely in point which decide the contrary. It is well settled that as a general rule the doctrine of the common law with respect to the obstruction and flow of surface water prevails in Kansas. *Railroad Co. v. Hammer*, 22 Kas. 763; *Gibbs v. Williams*, 25 id. 214; *Railroad Co. v. Riley*, 33 id. 374; *Railway Co. v. Steck*, 51 id. 737. See, also, *Jordan v. St. P. M. & M. Rly. Co.*, 43 N. W. Rep. 849; *Johnson v. C. St. P. M. & O. Rly. Co.*, 50 id. (Wis.) 771; *Lessard v. Stram*, 62 Wis. 112; *Abbott v. K. C. St. J. & C. B. Rly. Co.*, 83 Mo. 271; *Clark's Adm'x v. H. & St. J. Rld. Co.*, 36 id. 202; *Rowe v. St. P. M. & M.*

*Rly. Co.*, 43 N. W. Rep. (Minn.) 76; *Hannaher v. St. P. M. & M. Rly. Co.*, 37 id. 717; *Henderson v. City of Minneapolis*, 20 id. 322; *Hanlin v. C. & N. W. Rly. Co.*, 61 Wis. 515; *Waters v. Village of Bay View*, 61 id. 642; *O'Conner v. Fon du Lac, A. & P. Rly. Co.*, 52 id. 526.

*S. S. Kirkpatrick*, for defendant in error:

I contend that such acts on the part of the railroad company were outside of the authority conferred by the condemnation proceedings, and wrongful, and render the railroad company liable, and the lower court so held. In *Hogenson v. St. P. M. & M. Rly. Co.*, 18 Am. & Eng. Rld. Cases, 291, the identical question here presented came before the supreme court of Minnesota. This is what lawyers sometimes call a "a bay-horse case," and sustains the ruling of the court without question. In the note to this case will be found a vast array of authorities from many states supporting this doctrine. In addition to these authorities I cite the following, and each and every one of them is directly in point and sustains my position: *C. & V. Rld. Co. v. Stevens*, 73 Ind. 278; *Templeton v. Voshloe*, 72 id. 134; *Whaller v. Lancashire Rld. Co.*, 17 Am. & Eng. Rld. Cases, 66; *C. & A. Rld. Co. v. Bennan*, 78 Mo. 504; *Olson v. St. P. M. & M. Rld. Co.*, 34 Am. & Eng. Rld. Cases, 152; *City of Crawfordsville v. Bond*, 96 Ind. 236; *Pettigrew v. Village of Evansville*, 25 Wis. 223; *City of Aurora v. Reed*, 57 Ill. 29; *City of Dixon v. Baker*, 65 id. 518; *Ross v. City of Clinton*, 46 Iowa, 606.

Many other cases might be cited, but I deem it wholly unnecessary, as I doubt very much whether a single adjudicated case can be found which holds that one landholder may collect in ditches surface water that falls upon his own land or that of others, and discharge it upon the lands of another in a body, without being liable for damages, and I care not whether these be called ditches or borrow-pits. I, therefore, reach the conclusion that the petition states facts constituting a cause of action, and that the demurrer thereto was properly overruled. This is really the only question presented in this record.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below by Samuel H. Renfro against the Missouri Pacific Railway Company to recover damages to his premises resulting from surface water. Before the damages occurred, a right-of-way was properly condemned for the railway company through his premises, and the damages assessed for the construction of the road were received by him. In his petition, Renfro alleged that the railway was negligently and unskillfully constructed, with deep ditches upon the sides thereof, for a mile or more, and that a narrow and insufficient culvert was constructed under the road on his land, so that the surface water collected and conducted down on his land was unable to pass through the same. Upon the trial, the jury found that the road was improperly and negligently constructed, as follows:

"By digging long and continuous ditches along said railroad and tearing down embankment at hedge north of plaintiff's premises, thereby conducting a large volume of water onto said premises that would not otherwise run there, thereby cutting a ditch through plaintiff's land and otherwise damaging it. Also, by constructing a culvert so small through railroad grade that the water could not run off without flooding plaintiff's land west of railroad."

The examination of the evidence, however, shows that there was no evidence introduced to sustain the finding that the railroad was not properly constructed. The railway company had a right to construct and maintain its road, and all of its acts were done upon its right-of-way, for which Renfro received compensation. The "long and continuous ditches" referred to in the findings were caused by taking dirt from either side of the line of the road for the purpose of constructing a roadbed. The plaintiff testified:

"Ques. This road is now level — about with the ground? Ans. Graded up.

"Q. This road is built through here, and there are borrow-pits on both sides of it where they took out the dirt to make the grade? A. Yes, sir.

"Q. Those ditches are where they took out the dirt to make the grade? A. Yes, sir."

The "tearing down of the embankment at the hedge north of Renfro's premises" was not complained of in the petition, and, even if it were, it appears from the evidence that the railway could not have been constructed without cutting through the hedge, and, therefore, that was not an improper or negligent act. The plaintiff testified:

"Ques. Now, the hedgerow crosses the railroad here? Ans. Yes, sir.

"Q. And in making that right-of-way they cut a place through the hedgerow? A. Yes, sir.

"Q. And the water turned into that ditch? A. Yes, sir.

"Q. They couldn't very well build a road without doing that, could they? A. No, sir.

"Q. They couldn't at all? A. No, sir; but I don't consider that I am responsible for that."

In reference to the culvert being too small, it is sufficient to say that the company was not compelled to construct a culvert upon its own land to carry off surface water. In *A. T. & S. F. Rld. Co. v. Hammer*, 22 Kas. 763, it was decided that

1. Surface water, flow of—rule.

"The simple fact that the owner of one tract of land raises an embankment upon it which prevents the surface water falling and running upon the land of an adjoining owner from running off said land, and causes it to accumulate thereon, to its damage, gives to the latter no cause of action against the former; nor is the rule changed by the fact that the former is a railroad corporation, and its embankment raised for the purpose of a railroad track, nor by the fact that a culvert could have been made under said embankment sufficient to have afforded an outlet for all such surface water."

2. Obstruction of roadbed—liability.

In that case, BREWER, J., speaking for the court, remarked:

"No exception is shown to the general rule by the fact that the party raising the embankment is a railroad corporation, and the embankment raised upon its right-of-way for use as a railroad track, nor by the fact that a culvert could have

been placed in such embankment sufficient to have afforded an outlet for all such surface water, nor by the fact that a culvert was placed therein insufficient to afford such outlet."

There is a conflict in the decisions of the different states upon the subject of surface water, because some follow the rule of the civil law and others the rule of the common law. The rule of the common law has already been adopted in this state, and under that rule one landowner has the right to use and improve his own land for the purpose for which similar land is ordinarily used; and he may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water, which before flowed upon it, from going upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go.

In the late case of *C. K. & N. Rly. Co. v. Steck*, 51 Kas. 737, the authorities concerning the nonliability for damages resulting from surface water are collated. In that case it was held that

"An owner of land who builds an embankment thereon which obstructs the flow of surface water that falls and accumulates upon his neighbor's land does not become liable for the injury arising therefrom, unless the passageway through which it flows is such as to constitute a water course."

*Jordan v. Railway Co.*, 43 N. W. Rep. (Minn.) 849, is very similar to the one at bar. It was observed by the chief justice:

"The case is therefore one where the railroad company, for the purpose of properly constructing its roadbed, takes earth from one part of its premises and uses it upon the roadbed, thus leaving an excavation or ditch along each side of it, which is the usual and ordinary way of constructing railroads in prairie countries. . . . It is conceded that the defendant had a right to construct and maintain its railroad, and that its acts were done upon its right-of-way, rightfully acquired. It is to be regarded, therefore, as an owner doing the acts complained of on its own premises; and its duty and liability are to be measured by the rule as to the duty and liability in re-

3. Not liable to adjoining landowner, when.

spect to surface waters that attaches in the case of an owner in the use of his own land."

(See, also, *Johnson v. C. St. P. M. & O. Rly. Co.*, 50 N.W. Rep. [Wis.] 771; *Lessard v. Stram*, 62 Wis. 112; *Abbott v. K. C. St. J. & C. B. Rly. Co.*, 83 Mo. 271; *Henderson v. City of Minneapolis*, 20 N. W. Rep. [Minn.] 322; *Hanlin v. C. & N. W. Rly. Co.*, 61 Wis. 515; Ang. Water Courses, 7th ed. 118–121; *Hannaher v. St. P. M. & M. Rly. Co.*, 37 N. W. Rep. [Dak.] 717.) In the latter case it was remarked:

"If, by the usual and ordinary construction of its road, the surface of the earth was necessarily changed, and the currents of the surface water were interrupted and diverted, it was one of those ordinary incidents of railroad construction which might have been reasonably expected to have resulted from such work, and one that plaintiffs themselves were bound to have guarded against and to have used such precautions as were in their power to remedy. Any other rule would require railroad companies in level countries to build their roads upon elevated trestles, or encounter the hazard of some disturbance of surface elements."

If the petition had not alleged that the railway was constructed in a negligent and unskillful manner, it would have been demurrable; but as it appeared from the evidence that the railway was constructed in the usual and ordinary manner, and that the ditches complained of were the mere incidents of or necessary to the proper construction of the road, no liability to the landowner for injuries from surface water rested upon the railway company.

On the part of Renfro, two cases are cited from Minnesota which are claimed to be nearly identical with the case presented, and to sustain the judgment rendered. These are *Hogenson v. St. P. M. & M. Rly. Co.*, 18 Am. & Eng. Rld. Cases, 291; and *Olson v. St. P. M. & M. Rld. Co.*, 34 id. 152. In the first case, the railway company extended its road in a northeasterly and southwesterly direction; there were ditches parallel with the railroad; the water collected in these ditches, and the company, for the express purpose of draining its land,

and for no other purpose, dug a ditch westerly from the railroad and about three miles long, and thereby drained its land, and other low, wet and marshy land, onto the plaintiff's. In that case, the ditch complained of was made for the purpose of drainage only, and not as incidental or necessary to the construction of the road. In the second case, the railway company built a ditch at a right angle from the ditches excavated parallel to and upon each side of its roadbed. This ditch, also, was for the purpose of drainage only, and not built for the purpose of properly constructing the roadbed. These two, and the other cases cited in support of the judgment, excepting those from Iowa and Illinois, where the rule of the civil law as to the flow of surface water is in force, are all based upon the doctrine that a landowner may not, by way of drainage only, improve his own land by transferring to the land of another a burden which nature imposed upon his own lands; but none of the decisions from the states where the rule of the common law concerning surface water has been adopted prevent a landowner from obstructing or diverting surface water from its usual course, if the same is done in the usual and ordinary manner, and as a mere incident to the improvement of his lands, by the building of a house, a railroad, or any other like structure.

There is a marked distinction between *A. T. & S. F. Rld. Co. v. Hammer*, 22 Kas. 763; *C. K. & N. Rld. Co. v. Steck*, 51 id. 737; *Jordan v. Railway Co.*, 43 N. W. Rep. 849; *Hannaher v. Railway Co.*, 37 id. 717, and the Hogenson and Olson and similar cases, which is clearly noticeable, if the opinions are carefully read and examined. In fact these cases do not conflict, but the latter cases are not applicable to the facts of this case; therefore, the principles in the former cases control.

For the list of states that follow the common-law rule concerning surface water, and those that follow the civil-law rule, see 34 Am. & Eng. Rld. Cases, 148–152; Gould, Waters, § 265.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.